KING, Justice,
for the Court:
¶ 1. On June 24, 2014, Thad Cochran, a Republican nominee for United States Senator, won the Republican primary runoff. Chris McDaniel, his opponent, filed an election contest with the State Republican Executive Committee (SREC) on August 4, 2014 — forty-one days after the election. The SREC declined to consider McDaniel’s complaint, and McDaniel sought judicial review. Relying on Kellum v. Johnson, 237 Miss. 580, 115 So.2d 147 (1959), the trial judge found that McDaniel did not meet the twenty-day deadline to file his election contest and dismissed the case. On appeal, McDaniel argues that no deadline exists to contest a primary elec *994 tion. Under the doctrine of stare decisis, we find that Kellum applies, McDaniel failed to file his election contest within twenty days, and the dismissal is affirmed.
FACTS AND PROCEDURAL HISTORY
¶ 2. On Tuesday, June 3, 2014, the Mississippi Republican Party held its primary election for the office of United States Senator. McDaniel received the highest number of votes and Cochran finished second. Because neither received a majority of the votes cast, a runoff was held three weeks later on Tuesday, June 24, 2014.
¶3. The returns were canvassed, the results declared, and Cochran was announced as the winner and Republican nominee for United States Senator. On July 7, 2014, the SREC certified the election results to the Mississippi Secretary of State. The SREC also amended its certification on July 10, 2014.
¶4. McDaniel sought to examine the ballot boxes for multiple counties and, on July 3, 2014, gave the required three-days’ notice. Over twenty-eight days, McDaniel examined election records across the State. McDaniel alleged that several circuit court clerks precluded him from viewing original election records, impeding his examination.
¶ 5. Pursuant to Mississippi Code Section 23-15-923, McDaniel filed his election-contest complaint with the SREC on August 4, 2014, forty-one days after the primary runoff election. McDaniel alleged that the integrity of the June 24 primary was comprised because “Democrat voters were allowed to cast illegal and fraudulent ballots” and a large number of “[i]llegal votes by absentee ballot were likewise included in the final count[.]” Thereafter, McDaniel supplemented his complaint twice — on August 6, 2014, and on August 12, 2014-to add election code violations. On August 6, 2014, the SREC informed McDaniel that, due to time constraints, it would not review his petition and encouraged him to seek judicial review. The SREC’s letter also mentioned that Kellum “appear[ed] to impose a [twenty-]day time limit from the runoff to file a challenge[.]”
¶ 6. McDaniel petitioned for judicial review on August 14, 2014. This Court appointed the Honorable' Hollis McGehee to hear McDaniel’s election contest. On August 21, 2014, Cochran moved to dismiss the petition based on Kellum, which held that a challenge to a district or statewide election must be initiated within twenty days of the election. McDaniel countered that the plain language of the statute did not provide a date by which an election contest must be filed. McDaniel also argued that Kellum was based on election laws since repealed by the Legislature and, hence, did not apply.
¶ 7. The trial court heard arguments on Cochran’s motion to dismiss on August 28, 2014, and rendered a bench opinion on August 29, 2014. Thereafter, the trial court entered its final judgment on September 4, 2014. While Section 23-15-923 did not state when the complaint must be filed, the trial court determined that an analogous statute regarding a single county election — Mississippi Code Section 23-15-921 — established a twenty-day deadline. The trial court noted that Kellum analyzed predecessor statutes and, using principles of statutory construction, determined that the deadline also applied to a contest of a multicounty or statewide office. The trial court concluded that the substance of the predecessor statutes was essentially the same as current law and, thus, Kellum was applicable to the present case. Because McDaniel did not file his complaint within twenty days of the primary, the trial court dismissed the petition for judicial review with prejudice. McDaniel timely filed his notice of appeal *995 on September 5, 2014. This Court expedited the appeal.
DISCUSSION
¶ 8. • “In an election contest, the standard of review for questions of law is de novo.” Garner v. State Democratic Exec. Comm., 956 So.2d 906, 909 (Miss.2007) (citing Ladner v. Necaise, 771 So.2d 358, 355 (Miss.2000)).
¶9. McDaniel’s argument has three main points: (1) The express language of Section 23-15-923 is clear and unambiguous; the Legislature intended to remain silent regarding when a primary election contest must be filed. (2) Kellum, which found that a twenty-day deadline to contest the primary for a single county office also applied to a primary contest of a multi-county or statewide office, was decided wrongly and no longer has precedential value: (3) Barbour v. Gunn, 890 So.2d 843 (Miss.2004), which involved an election petition filed thirty-four days after the primary election, overruled Kellum.
I. Section 23-15-923 and Its Predecessors
¶ 10. McDaniel filed his complaint under Section 23-15-923, which concerns primary election contests for multi-county and statewide office:
[A] person desiring to contest the election of another returned as the nominee in state, congressional and judicial districts, and in legislative districts composed of more than one (1) county or parts of more than one (1) county, upon complaint filed with the Chairman of the State Executive Committee, by petition, reciting the grounds upon which the election is contested. If necessary and with the advice of four (4) members of said committee, the chairman shall issue his fiat to the chairman of the appropriate county executive committee, and in like, manner as in the county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee. The State Executive Committee by majority vote of members present shall declare the true results of such primary.
Miss.Code Ann. § 23-15-923 (Rev. 2007). The statute does not mention when the complaint should be filed. In contrast, Section 23-15-921, which concerns a primary election contest involving a single-county, provides a twenty-day deadline:
[A] person desiring to contest the election of another person returned as the nominee of the party to any county or county district office, or as the nominee of a legislative district composed of one (1) county or less, may, within twenty (20) days after the primary election, file a petition with the secretary, or any member of the county executive committee in the county in which the election was held, setting forth the grounds upon which the primary election is contested; and it shall be the duty of the executive committee to assemble by call of the chairman or three (3) members of said committee, notice of which contest shall be served five (5) days before said meeting, and after notifying all parties concerned proceed to investigate the grounds upon which the election is contested and, by majority vote of members present, declare the true results of such primary.
Miss.Code Ann. § 23-15-921 (Rev. 2007) (emphasis added).
¶ 11. McDaniel asserts that Section 23-15-923 is clear and unambiguous, and the Court should apply the plain meaning of the statute. McDaniel cites City of Natchez v. Sullivan, 612 So.2d 1087 (Miss.1992), as support: “[T]he omission of language from a similar provision on a similar subject indicates that the legislature had a different intent in enacting the provisions, which it manifested by the *996 omission of the language.” City of Natchez, 612 So.2d at 1089. According to McDaniel, a primary election contest for a statewide office is more complicated than one for a single-county office and, thus, would require more time (an unpredictable amount of time) to resolve. For that reason, McDaniel claims it is conceivable that the Legislature purposefully declined to set forth a fixed deadline to contest a statewide primary election.
¶ 12. As comparison, McDaniel states that Mississippi Code Section 23-15-927 did not impose a deadline within which to file a petition for judicial review, only stating that it should be filed “forthwith.” Miss.Code Ann. § 23-15-927. In a previous case, the Court addressed the statute and found that it did not impose a fixed time limit and that “forthwith” was to be determined on a case-by-case basis. Pearson v. Parsons, 541 So.2d 447 (Miss.1989). Cochran points out, and the Court acknowledges, that Section 23-15-927 was amended in 2012 and now gives challengers ten days to file a petition for judicial review. See Miss.Code Ann. 23-15-927 (Supp.2014).
¶ 13. The Court notes that Section 23-15-923 does not even include language, like “forthwith,” to suggest that the election contest should be filed within a reasonable time. If a statute is plain and unambiguous, the Court will employ its plain meaning. Mississippi Methodist Hosp. and Rehab. Ctr., Inc. v. Miss. Div. of Medicaid, 21 So.3d 600, 607 (Miss.2009). The Court may, however, engage in statutory interpretation where a statute is ambiguous or silent on an issue. Id. The Court’s goal is to determine the legislative intent. Id. “The best evidence of legislative intent is the text of the statute; the Court may also look to the statute’s historical background, purpose, and objectives.” Id. (quoting In re Duckett, 991 So.2d 1165, 1181-82 (Miss.2008)). A historical review of Sections 23-15-921 and 23-15-923 is helpful to this analysis.
¶ 14. The substance of Sections 23-15-921 and 23-15-923 originated in 1908. Prior to that time, no procedure existed to contest a primary election. See Kellum, 115 So.2d at 149. The original act was codified in one section and had three parts. 1908 Miss. Laws ch. 136. Section one concerned “district, county, or beat office” and, in pertinent part, stated that the challenger had to file a contest “within twenty days after the primary election.” Id. It also detailed how the county executive committee should investigate the allegations and decide the result of the election. Id. Section two provided that, in a primary for an office covering multiple counties, the state executive committee must call upon the county committees to investigate the claim, “in like manner as in county office[.]” Id. Section three — the enforcement arm of the act — authorized a committee (county or state) to subpoena witnesses. Id.
¶ 15. In the Mississippi Code of 1942, the single 1908 Act was separated into three Sections — Sections 3143, 3144, and 3145. Kellum, 115 So.2d at 149. Sections 3143 and 3144 are pertinent to this discussion. Section One of the 1908 Act became Section 3143 and provided that:
A person desiring to contest the election of another person returned as the nominee of the party to any county or beat office, may, within twenty days after the primary election, file a petition with the secretary, or any member of the county executive committee in the county in which fraud is alleged to have been perpetrated, setting forth the grounds upon which the primary election is contested; and it shall be the duty of the executive committee to assemble by call of the chairman or three members of said committee, notice of which contest *997 shall be served five days before said meeting, and after notifying all parties concerned, proceed to investigate the allegations of fraud, and, by majority vote of members present, declare the true results of such primary.
Miss.Code § 3143 (1942). Section Two of the 1908 Act became Section 3144 and provided that:
In state, congressional and judicial districts, upon complaint filed with the chairman of the state executive committee, by petition, reciting the allegations of fraud, and with the advice of four members of said committee, the chairman shall issue his fiat to the chairman of the county executive committee, where fraud is alleged to have been committed, and in like manner as in county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee, which shall declare the candidate nominated, whom the corrected returns show is entitled to the same. And the same procedure shall apply to senatorial and flotorial contests in and by their respective executive committees.
Miss.Code § 3144 (1942).
¶ 16. The Legislature attempted to consolidate election law into one, coherent code and “remedy the deficiencies resulting from the State’s earlier practices.” Andrew Taggart and John C. Henegan, The Mississippi Election Code of 1986: An Overview, 56 Miss. L.J. 535, 536-37 (1986). Its three previous attempts were unsuccessful and blocked by federal court under Section 5 of the Voting Rights Act. Thereafter, the Legislature assembled a twenty-five-member task force to draft the election laws “into a single, comprehensive bill.” Id. at 537-41. The end result was the Mississippi Election Code of 1986. Id. at 536. The Mississippi Code specifically states that Section 23-15-921 is derived from Section 3143 and that Section 23-15-923 is “[djerived from 1942 Code § 3144[.]” Miss.Code Ann. §§ 23-15-92; 23-15-923 (Rev. 2007).
¶ 17. So Mississippi’s primary election statutes originated in a single Act and are now split into separate sections. The statute-numbering sentence employed in the Mississippi Code, however, was created by the publisher. The preface states that the Mississippi Code “brings together provisions of general statutory law having a common subject matter into a more orderly and logical framework of code titles and chapters, and employing a modern and effective Section numbering system.” Miss.Code of 1972, Titles 21 to 23, Preface, at iii (Rev. 2007). In the user’s guide, the publisher explains its organization and numbering system. Miss.Code of 1972, Titles 21 to 23, User’s Guide, at xi (Rev. 2007).
II. Kellum v. Johnson
¶ 18. One case details the relationship between the 1908 Act and Sections 3143 and 3144 — Kellum v. Johnson. The Court addressed Section 3144’s silence regarding when to file a primary election contest for an office covering multiple counties. The Court considered the historical background, purpose and objectives of the relevant statutes.
¶ 19. In Kellum, the losing candidate for the office of District Attorney of the Seventeenth Circuit Court District challenged the election results in the Democratic primary. Kellum, 115 So.2d at 148. The election took place on August 4, 1959, and Kellum filed his complaint on September 8, 1959-thirty-five days after the election. Id. The Democratic Executive Committee decided to take no action on the complaint. Id. Thereafter, Kellum sought judicial review. Id. Johnson, the declared winner, moved to dismiss Kellum’s petition *998 as untimely because it was not tiled within twenty days of the primary election. Id. The trial court agreed, dismissing the petition. Id. Kellum appealed to this Court.
¶ 20. The- Court considered the history of. the State’s primary election contest-laws, starting with the 1908 Act. Id. at 149. The Court stated that the 1908 Act, “with slight and unimportant amendments, now appears as Sections 3143^45, Code of 1942....” Id. Because Sections 3143 and 3144 were parts of the same Act and regarded the same subject matter, the Court determined that the Sections must be considered as a whole:
An intent to discriminate unjustly between different cases of the same kind is not to be ascribed to the Legislature. Statutes should, if possible, be given a construction which will produce reasonable results, and not uncertainty and confusion.
[[Image here]]
The different parts of a statute reflect light upon each other, and statutory provisions are regarded as in pari materia where they are parts of the same act. Hence, a statute should be construed in its entirety; and as a whole. The general intention is the key to the whole act, and the intention of the whole controls the interpretation of its parts. The fact that a statute is subdivided into Sections or other parts should not obstruct or obscure the interpretation of the law as a whole. All parts of the act should be considered, compared, and construed together. It is not permissible to rest the construction upon any one part alone, or upon isolated words, phrases, clauses, or sentences, or to give undue effect thereto.
Id. at 149-50.
¶ 21. The Court noted that Section 3144 did not mention when the complaint should be filed. The Court recognized, however, that a primary election contest “must be conducted speedily” in light of the looming general election. Id. at 150. Using canons of statutory construction, the Court considered the statutes as a whole and determined that the twenty-day deadline to file a contest for a single county office (Section 3143) also applied to an office covering multiple counties (Section 3144). The Court also considered a statute pertaining to a general or special election contest which required that a complaint be filed within twenty-days and found it to be persuasive authority. Miss.Code § 3287 (1942).
¶ 22. The Court reasoned that:
It is inconceivable that the Legislature intended to limit the time in which contests could be filed where, a county or beat office was involved, and yet fix no time limit whatever for that purpose in regard to all other offices. So to hold would convict the Legislature of unaccountable capriciousness and result in endless uncertainty and confusion. The two Sections are in pari materia, and all contests therefore must be begun within twenty days after the primary. To hold otherwise would be senseless.
Id. Finding that the twenty-day deadline was “a condition precedent to the right to file a contest” under Section 3144, the Court found that Kellum had failed to meet the deadline and, in a unanimous opinion, dismissed the case. Id. at 151.
¶ 23. McDaniel states that, since Kel-lum, the Legislature repealed Sections 3143 and 3144 and made material changes to the statutes. Thus, McDaniel argues that Kellum no longer has precedential value. McDaniel also notes that the Legislature added or modified time requirements in forty-seven sections of the election code. According to McDaniel, the Legislature had the opportunity, if it desired, to add a time requirement to Section 23-15-923 to contest a primary election; it *999 did not. Cochran counters that the substance of Sections 3143 and 3144 was carried forward in current election law and, thus, Kellum applies.
¶ 24. “Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.” Caves v. Yarbrough, 991 So.2d 142, 153 (Miss.2008) (quoting Lorillard, Div. of Loew’s Theatres, Inc. v. Pons, 434 U.S. 575, 580-81, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)). The Legislature reenacted Section 3144 in Section 23-15-923 without material change. Review a side-by-side comparison of the former and current statute:
§ 3144 Chairman of state executive committee to issue his fiat to county chairman reciting charges.
In state, congressional and judicial districts, upon complaint filed with the chairman of the state executive committee, by petition, reciting the allegations of fraud, and with the advice of four members of said committee, the chairman shall issue his fiat to the chairman of the county executive committee, where fraud is alleged to have been committed, and in like manner as in county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee, which shall declare the candidate nominated, whom the corrected returns show is entitled to the same. And the same procedure shall apply to senatorial and flotorial contests in and by their respective executive committees.
§ 23-15-923. Nominations with respect to State, congressional, and judicial districts, etc., investigation findings, and declaration of nominee.
Except as otherwise provided in Section 23-15-961, a person desiring to contest the election of another returned as the nominee in state, congressional and judicial districts, and in legislative districts composed of more than one (1) county or parts of more than one (1) county, upon complaint filed with the Chairman of the State Executive Committee, by petition, reciting the grounds upon which the election is contested. If necessary and with the advice of four (4) members of said committee, the chairman shall issue his fiat to the chairman of the appropriate county executive committee, and in like manner as in the county office, the county committee shall investigate the complaint and return their findings to the chairman of the state committee. The State Executive Committee by majority vote of members present shall declare the true results of such primary.
¶ 25. One material change exists. The Legislature expanded the grounds to contest a primary election. Under Section 3144, a person could challenge an election only for fraud. Now, Section 23-15-923 does not limit the grounds for a challenge. No other changes were made to the substance of the law. For instance, Section 23-15-923 clarifies who can filé an election contest. It eliminates antiquated language such as “senatorial and flotorial contests” and clarifies that election challenges shall be filed with the State Executive Committee. The changes are not material. Thus, Kellum still has precedential value.
¶26. The Court previously has found that a judicial interpretation of a statute was adopted when the Legislature reenacted the statute without change. Take, for example, McDaniel v. Beane, 515 So.2d 949 (Miss.1987). J.C. McDaniel, not to be confused with the Appellant, failed to have his petition for judicial review signed by two, disinterested lawyers pursuant to Section 23-15-927. Id. at 950-952. On appeal, he argued that the statute did not require that the petition be signed by disinterested lawyers. The Court, however, found that the “disinterested” language was contained in another statute and, by previous caselaw, was judicially interpret *1000 ed into Section 23-15-927. Id. at 951-952; see Pittman v. Forbes, 186 Miss. 783, 191 So. 490 (1939); Pearson v. Jordan, 186 Miss. 789, 192 So. 39 (1939). Because the statutes were re-enacted into current law without substantial change, the Court found that the prior judicial interpretation was engrafted into the statute. Id.
¶ 27. Viewed side-by-side, former Section 3144 and current Section 23-15-923 are not materially different. Thus, it cannot be said that the Legislature intended to repeal the statute and thereby lessen Kellum’s precedential value. The Legislature is assumed to be aware of judicial interpretations of its statutes, and the Legislature has failed to amend Section 23-15-923 to reflect a decision contrary to Kellum. “[W]e must conclude that the legislative silence amounts to acquiescence.” Caves, 991 So.2d at 154. The Court’s interpretation of the statutes in Kellum, was approved by the Legislature, and, absent legislative action, has become a part of the statute. See Crosby v. Alton Ochsner Med. Found., 276 So.2d 661, 670 (Miss.1973).
¶ 28. Even if we disagreed with Kellum’s holding, the principle of stare decisis is strong. “[A] former decision of this court should not be departed from, unless the rule therein announced is not only manifestly wrong, but mischievous.” Caves, 991 So.2d at 151. Of course, McDaniel alleges that Kellum is mischievous, as its application would result in an illogical outcome — the challenger would be required to file the contest before the examination of election records is complete. But, as Cochran points out, it is possible for a challenger to file an election contest, which covers multiple counties, within twenty days. See, e.g. Pyron v. Joiner, 381 So.2d 627 (Miss.1980) (within twenty days of primary, candidate filed complaint to contest election for office that covered thirty counties). Also; the initial complaint, like any other complaint, must specify only a claim under the statute. See Miss.Code Ann. § 23-15-923 (Rev. 2007) (stating that the complaint must “recit[e] the grounds upon which the election is contested”). The challenger may amend his or her petition to include additional evidence. See, e.g., Noxubee County v. Russell, 443 So.2d 1191 (Miss.1983). In fact, McDaniel amended his complaint twice after filing with the SREC. We are not persuaded by his argument.
¶ 29. Briefly, we address the argument presented by amicus curiae, Conservative Action Fund. Conservative Action Fund contends that the Court should afford strict deference to the plain language of Section 23-15-923. It states that anything more would violate the Elections Clause of the United States Constitution, which grants the Legislature exclusive authority to regulate federal elections. See U.S. Const, art. I, § 4, cl. 1. The Court’s decision in no way violates the Elections Clause. It is our job to resolve ambiguities in the law. This is fundamental. We are not creating a deadline. As determined by Kellum’s sound interpretation of our election contest laws, the deadline already exists; it was put in place by the Legislature in 1908, and it was carried forward into the present statute.
III. Barbour v. Gunn
¶ 30. McDaniel argues that the Court’s decision in Barbour v. Gunn, 890 So.2d 843 (Miss.2004), overruled Kellum. Cochran counters that Barbour did not address the time to file an election contest and thus is inapplicable.
¶ 31. In Barbour, Jep Barbour and Phillip Gunn sought the Republican nomination for District 56 of the Mississippi House of Representatives. Id. at 844. The primary election was held on August 5, 2003. Id. Barbour was declared the *1001 winner. Id. Under Section 23-15-923, Gunn filed an election contest on September 8, 2003-thirty-four days after the primary. Id. The SREC retained jurisdiction and set a hearing date for October. Id. at 845. Gunn, however, chose to file a petition for judicial review. Id. The judge ruled in favor of Gunn and ordered a new election in two precincts. Id. Barbour appealed. Id.
¶ 32. The Court addressed whether the circuit court had jurisdiction to consider Gunn’s petition when he did not allow the SREC a reasonable opportunity to act upon the petition. Id. at 846. The question as to whether Gunn timely filed his petition was not addressed. Ultimately, the Court determined that, because the SREC expressed doubt as to whether it could decide the issue before the general election, Section 23-15-927 allowed Gunn to seek judicial review. Id. at 847.
¶ 33. McDaniel states that, prior to a review on the merits, the Court is required to determine whether it has jurisdiction of a ease. McDaniel argues that, as a result, the Barbour Court considered whether Gunn filed his petition timely and, by exercising jurisdiction, the Court determined that the petition was timely. McDaniel cites Drummond v. State, 184 Miss. 738, 185 So. 207 (1938), in support:
It has been argued that inasmuch as the high court did not mention the subject of its jurisdiction, or the question of the direct appeal, it may be considered that it did not pass upon that question. The authorities above cited are distinctly contrary to any such argument, for the court was bound to pass upon the question, as already shown. Therefore, instead of assuming that it did not pass upon the question — which assumption would be that it was oblivious of its duties in the premises — we must rather assume that it considered the question so plain, that the validity of the statute in that respect was so obvious, that it required no discussion of the point ... it is the duty of an appellate court to inquire of its own motion, even though the question is not raised by the parties, whether the appellate court has jurisdiction.
Id. at 209-210. Hence, McDaniel believes that the Court’s exercise of jurisdiction in Barbour overruled Kellum.
¶ 34. Cochran counters that the parties in Barbour did not raise whether the candidate timely filed his election contest and, thus, Barbour’s silence on the issue did not overrule Kellum. In Foster v. Harden, 536 So.2d 905 (Miss.1988), the Court affirmed a trial court’s finding that it lacked jurisdiction to hear an election contest regarding a candidate’s residency despite the fact that the Court had decided the issue differently in a previous case. The Court noted that, in the earlier decision, the parties did not raise and the Court did not address jurisdiction. Id. (citing Gadd v. Thompson, 517 So.2d 576 (Miss.1987)). Cochran argues that, like the Foster eourt, the Court should not treat Barbour’s silence as overruling Kel-lum, stating that “[t]his Court is not bound by a prior exercise of jurisdiction in a ease where it was not questioned and it was passed sub silentio.” U.S. v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952).
¶ 35. Barbour addressed a different jurisdictional argument. The parties did not raise whether Gunn’s petition was filed timely, and we will not imply that the Court reached the question. We find that, because Barbour did not address the time to file, Barbour did not overrule Kellum’s explicit holding.
CONCLUSION
¶ 36. In 1959, the Court, in Kellum, through canons of statutory construction, *1002 determined that a candidate has twenty days following the primary to file an election contest for an office covering multiple counties. The statutes considered in 1959 have been reenacted without material change. Thus, under the doctrine of stare decisis, we find that McDaniel failed to file his election contest timely, and the trial judge did not err by dismissing the case.
¶ 37. AFFIRMED.
WALLER, C.J., AND KITCHENS, J., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J. DICKINSON, P.J., CHANDLER AND PIERCE, JJ., NOT PARTICIPATING.