# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00605-SCT

*LEGISLATURE OF THE STATE OF MISSISSIPPI*

*v.*

*ADRIAN SHIPMAN, MISSISSIPPI ATTORNEY GENERAL'S OFFICE AND BOBBY MOAK, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/03/2015 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL B. WALLACE |
| | CHARLES EDWARD COWAN |
| ATTORNEYS FOR APPELLEES: | JAMES A. KEITH |
| | CARROLL RHODES |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAUL E. BARNES |
| | DANNY E. CUPIT |
| | LATRICE WESTBROOKS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 08/13/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Adrian Shipman, one of the appellees in the above-styled case, filed a Petition Appealing the Attorney General's Ballot Title for Legislative Alternative Measure 42A in the First Judicial District of Hinds County, Mississippi. As more fully set forth below, the petition, filed pursuant to Mississippi Code Section 23-17-13, asked the circuit court to review the ballot title drafted by the Attorney General pursuant to Mississippi Code Sections

23-17-33 and 23-17-9 for the so-called Alternative Measure 42A, which the Legislature proposed as an amendment to Measure 42, itself a ballot measure proposed by petition of qualified electors pursuant to Section 273 of the Mississippi Constitution. Although the Legislature of the State of Mississippi as appellant raises several issues, we hold that the circuit court had no authority to entertain an appeal of the Attorney General's ballot title for a legislatively created amendment to a ballot measure. Because the Circuit Court of Hinds County had no authority to hear the appeal, we reverse and render.

**Facts and Procedural History**

¶2.     In March 2014, Luther T. Munford filed a proposed initiative measure with the Mississippi Secretary of State. If adopted, the proposed initiative measure, Initiative Measure 42, would amend Article 8, Section 201 of the Mississippi Constitution,[1] to provide as follows:

> To protect each child's fundamental right to educational opportunity, the State shall provide for the establishment, maintenance and support of an adequate and efficient system of free public schools. The chancery courts of this State shall have the power to enforce this section with appropriate injunctive relief.

Fulfilling the duty imposed upon him by Mississippi Code Section 23-17-9, the Mississippi Attorney General drafted a ballot title for Measure 42 that reads, "Should the State be required to provide for the support of an adequate and efficient system of free public schools?"

---

[1] Article 8, Section 201 of the Mississippi Constitution presently provides, "[t]he Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." Miss. Const. art. 8, § 201.

¶3. That ballot title was challenged on appeal to the Circuit Court of Hinds County, First Judicial District, pursuant to Mississippi Code Section 23-17-13. The circuit court denied the challenge on April 25, 2014. Thereafter, sufficient signatures were obtained in support of Initiative Measure 42.

¶4. On October 6, 2014, the petition was submitted to the Secretary of State, who filed Initiative Measure 42 with the Secretary of the Senate and the Clerk of the House of Representatives on the first day of the 2015 Legislative Session. Thereafter, the House of Representatives adopted House Concurrent Resolution Number 9, which proposed an alternative to Initiative Measure 42. On January 14, 2015, the Senate adopted that resolution without amendment. Alternative Measure 42A would amend Article 8, Section 201 of the Mississippi Constitution and reads, "The Legislature shall, by general law, provide for the establishment, maintenance and support of an effective system of free public schools." The Attorney General ultimately formulated a ballot title for Alternative Measure 42A which reads, "Should the Legislature provide for the establishment and support of effective free public schools without judicial enforcement?" Notice of the ballot title for Alternative Measure 42A was published by the Secretary of State on March 19, 2015.

¶5. On March 24, 2015, Shipman, "a qualified voter and resident of Lafayette County, Mississippi," filed a Petition Appealing the Attorney General's Ballot Title for Legislative Alternative Measure 42A in the Circuit Court of Hinds County, First Judicial District. The petition asserted that Shipman was entitled to appeal pursuant to Section 23-17-13. According to Shipman, the ballot title for Alternative Measure 42A was "deficient as a

matter of form" because it "does not constitute a true and impartial statement that describes the purpose of the alternative measure . . . and it does not indicate, as clearly as possible, the essential differences in the measure[.]"

¶6. The Attorney General filed an entry of appearance in the matter and filed a response to Shipman's petition. The Attorney General argued that "the statutory 20-word limit imposes serious constraints on the information which can be included in a ballot title[,]" and that the ballot title "complies with all requirements of [S]ections 23-17-9 and 23-17-33[,]" as it "highlights the essential differences between the proposals in a fair, impartial, non-prejudicial, and non-argumentative way . . . ."

¶7. The Legislature of the State of Mississippi filed a Motion to Intervene. According to the Legislature, "[b]ecause [Shipman] has named no Defendants in the Petition, there is no party to this action who can or will represent the interest of the Legislature." Along with its Motion to Intervene, the Legislature filed (1) an Answer and Defenses and (2) a Motion to Dismiss. In those pleadings, the Legislature argued, *inter alia*, that the circuit court lacked jurisdiction over Shipman's petition "because no law vests this [c]ourt with jurisdiction[,]" and the petition "fails to state a claim upon which relief may be granted because no law authorizes [Shipman] to contest the ballot title assigned by [the Attorney General] pursuant to" Section 23-17-33.

¶8. In April 2015, the circuit court conducted a hearing on Shipman's petition. On April 6, 2015, the circuit court entered its Order. The circuit court granted Shipman's petition and

4

adopted a new ballot title for Alternative Measure 42A, which read, "Should the Legislature establish and support effective schools, but not provide a mechanism to enforce that right?"

¶9.     Aggrieved, the Legislature appealed.

**Discussion**

¶10.    Questions of jurisdiction and statutory interpretation, both of which come into play in today's case, present matters of law reviewed *de novo*. *5K Farms, Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 225 (¶ 14) (Miss. 2012) (citing *Ameristar Casino Vicksburg, Inc. v. Duckworth*, 990 So. 2d 758, 759 (Miss. 2008)).

**The Circuit Court of Hinds County lacked jurisdiction to hear Shipman's petition.**

¶11.    Although the Legislature raises several issues, the first – whether the Circuit Court of Hinds County had jurisdiction under Section 23-17-13 to hear Shipman's petition – disposes of the appeal. For the reasons given below, we hold that it did not.

¶12.    Mississippi Code Section 23-17-13 provides, in pertinent part, as follows:

> If any person is dissatisfied with the ballot title . . . formulated by the Attorney General, he or she may, within five (5) days from the publications of the ballot title and summary by the office of the Secretary of State, appeal to the circuit court of the First Judicial District of Hinds County by petition setting forth the measure, the title or summary formulated by the Attorney General, and his or her objections to the ballot title or summary and requesting amendment of the title or summary by the court.

> A copy of the petition on appeal together with a notice that an appeal has been taken shall be served upon the Secretary of State, upon the Attorney General and upon the person proposing the measure if the appeal is initiated by someone other than that person. . . . The court may hear arguments, and, within ten (10) days, shall render its decision and file with the Secretary of State a certified copy of such ballot title or summary as it determines will meet the requirements of Section 23-17-9. The decision of the court shall be final.

5

Miss. Code Ann. § 23-17-13 (Rev. 2007). We hold the above-quoted Section 23-17-13 only provides a mechanism to appeal ballot titles formulated by the Attorney General for Section 23-17-1(1) ballot measures (those proposed via petition of qualified electors); it provides no mechanism for and does not authorize any court to entertain appeals of ballot titles written for amendments to measures proposed by the Legislature pursuant to Mississippi Code Section 23-17-31.

¶13. The statutory language at issue in the instant case can be confusing,[2] so it is worth pausing here to note the two different statutorily created items that we discuss extensively below. The first, "measures," are amendments proposed to the Mississippi Constitution that derive from "petition of qualified electors." Miss. Code Ann. § 23-17-1(1) (Rev. 2007). The second are what Section 23-17-31 names as amendments to the previously defined measures. The Legislature drafts amendments to measures when it objects to a measure. Miss. Code Ann. § 23-17-31 (Rev. 2007).

---

[2] The language is so confusing that Justice Chandler, who agrees with us in result, would hold it to be ambiguous. Justice Chandler does an excellent job describing the language spread throughout the statutes that adds difficulty to our work in today's case, but, with respect, we disagree that Section 23-17-13 is ambiguous. A statute may be considered ambiguous when susceptible to two or more *reasonable* interpretations. *Tellus Operating Grp., LLC v. Maxwell Energy, Inc.*, 156 So. 3d 255, 261 (¶ 16) (Miss. 2015) (citing *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009)). While Justice Chandler's alternative interpretation of Section 23-17-13, which would give the circuit court jurisdiction over a case challenging the Attorney General's alternative measure ballot title, might be a possible one, for all of the reasons set forth herein, we cannot go so far as to consider it reasonable. Perhaps the Legislature could have been more selective with its language, but "the mere possibility of clearer phrasing cannot defeat the most natural reading of a statute[.]" *Caraco Pharm. Lab., Ltd. v. Novo Nordisk A/S*, 132 S. Ct. 1670, 1682 (2012).

¶14. Our primary goal in interpreting statutes is "to adopt that interpretation which will meet the true meaning of the Legislature." *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1276 (¶ 10) (Miss. 2006) (quoting *Stockstill v. State*, 854 So. 2d 1017, 1022-23 (Miss. 2003)). We do not add language where we see fit. *Scaggs*, 931 So. 2d at 1276 (¶ 10). We do not "decide what a statute should provide, but . . . determine what it does provide." *Palermo v. LifeLink Found., Inc.*, 152 So. 3d 1099, 1105 (¶ 13) (Miss. 2014) (quoting *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011)).

   **A. Section 23-17-13 allows only the appeal of a ballot title drafted for "measures," which is a statutorily defined term, includes only ballot initiatives proposed via petition of qualified electors, and excludes legislatively proposed amendments to measures.**

¶15. Section 23-17-13 mandates that, to effect the appeal of a ballot title, the person dissatisfied with it may file a petition "setting forth the measure. . . ." Miss. Code Ann. § 23-17-13 (Rev. 2007). A copy of the petition along with a notice that the appeal has been taken then is served on the Secretary of State, the Attorney General, and "the person proposing the measure," unless that person initiated the appeal. *Id.* The circuit court is required to "accord first priority to examining the proposed measure." *Id.* Accordingly, Section 23-17-13 applies to the appeal of a ballot title drafted for a measure.

¶16. In Section 23-17-1(1), the Legislature defines a measure as "an amendment to the Mississippi Constitution *proposed by a petition of qualified electors* under Section 273, Mississippi Constitution of 1890." Miss. Code Ann. § 23-17-1 (Rev. 2007) (emphasis added). We cannot ignore the Legislature's express definition. *Richardson v. Canton Farm Equip., Inc.*, 608 So. 2d 1240, 1250 (Miss. 1992) ("Of course, the legislature has [the] power

7

to define a term or phrase as it sees fit.") (citing *Miss. State Tax Comm'n v. Moselle Fuel Co.*, 568 So. 2d 720, 723 (Miss. 1990)). The Legislature saw fit to define the term "measure," which appears three times in Section 23-17-23, in such a way that it includes *only* amendments "proposed by a petition of qualified electors." The definition necessarily excludes what Section 23-17-31 calls "amendments to the measure" adopted by the Legislature, which Measure 42A would be, and it belies Shipman's contention, found in her brief, that Section 23-17-13 contains no language suggesting it applies only to amendments to the Constitution proposed via a petition of the electorate. In other words, pursuant to the statutory scheme, an amendment proposed by "petition of qualified electors," such as Measure 42, is a measure, and Measure 42A, submitted by the Legislature, is an amendment to the measure. The statutes provide two different semantic designations for two different things, and only one of those things – measures – is addressed in Section 23-17-13's creation of a right to appeal. Such a conclusion does not arise, as argued by Shipman, as a result of departing from the textual wording of the statute, but from paying close attention to the wording of the statute as well as the statutory definition of the "measure."

**B. The Legislature's choice of the publication of the ballot title to trigger the running of the five-day time limit to file an appeal indicates that Section 23-17-13 was not intended to apply to amendments to measures.**

¶17. Section 23-17-13 provides a five-day time limit for filing a petition to appeal the Attorney General's ballot title, and the event that triggers the five-day period is the publication "of the ballot title and summary by the Secretary of State." The ballot title and summary in question are those that Mississippi Code Section 23-17-9 requires the Attorney

8

General to draft after receipt of a measure. After generating the ballot title and summary, the Attorney General files them with the Secretary of State, who then must publish them in a newspaper of general circulation. Miss. Code Ann. § 23-17-11 (Rev. 2007). It is the Section 23-17-11 publication that triggers the five-day deadline for appealing the ballot title, but the above-described requirement of publication applies *only* to initiative measures proposed by the electorate. No corresponding requirement of publication for Section 23-17-33 amendments to the measure is generated by the Legislature. Shipman contends that the procedural requirement of publication is irrelevant, but the Legislature's choice to make the publication requirement the triggering event for the running of the five-day period makes it relevant.

¶18. To hold, as Shipman argues we should, that Section 23-17-13 includes within its scope appeals of ballot titles assigned to amendments to measures as well as measures, we would have to do so in spite of the fact that Section 23-17-13 provides no meaningful time limit on the appeal of an amendment to a measure. Were we to accede to Shipman's request, we would reach an interpretation that puts both creatures – the measure and the amendment to the measure – under the same statutory roof, but the rule of the house, that an appeal must be quickly filed within five days, would apply to only one. We cannot reasonably do so. We must give statutes the construction that "effectuate their purposes rather than . . . defeat them." ***Brady v. John Hancock Mut. Life Ins. Co.***, 342 So. 2d 295 (Miss. 1977). One purpose of the Legislature in providing a means to appeal ballot titles for measures was to set a reasonable time limit upon such appeals, but because the triggering event – publication

9

– need not occur with amendments to measures, there is no clear time limit applicable to ballot titles for amendments to measures, which defeats part of the above-described purpose.

### C. The notice provisions of Section 23-17-13 have no effect if Section 23-17-13 allows for the appeal of a title drafted for an amendment to a measure.

¶19.    The Legislature argues, and we agree, that the notice provisions of Section 23-17-13 have no effect upon the appeal of a ballot title drafted by the Attorney General for an amendment to a measure.  Section 23-17-13 provides, in pertinent part, "A copy of the petition on appeal together with a notice that an appeal has been taken shall be served upon the Secretary of State, upon the Attorney General and upon the person proposing the measure if the appeal is initiated by someone other than that person."  Miss. Code Ann. § 23-17-13 (Rev. 2007).  The notice requirement makes no provision for notifying the Legislature, which is odd, since, when drafting it, the Legislature was careful to ensure that any party interested in a measure is notified of such an appeal.  Indeed, the problem is well illustrated by Justice Kitchens's dissent, which assumes that the circuit court would have jurisdiction over the instant litigation, but the party drafting the initiative at issue would have no standing to appear.[3]  Such a legal contest would be no contest at all, and the possibility of it belies any

---

[3] It also should be noted that both dissents from our colleagues Justice Kitchens and Justice Pierce hit downstream, as it were, of the point where we find the matter resolved. Because we hold that the circuit court never had jurisdiction over the appeal of the ballot title for the legislative alternative measure at all, the circuit court erred in entertaining the arguments of any parties or reaching any result.  When the circuit court lacks jurisdiction to consider the merits of a matter, so does the Supreme Court. *J.R. Watkins Co. v. Guess*, 196 Miss. 438, 17 So. 2d 795, 796 (1944), *overruled on other grounds by Jefferson v. Miss. State Highway Comm'n*, 254 So. 2d 181, 182 (Miss. 1971).  Also, the Mississippi Rules of Appellate Procedure, upon which Justice Kitchens heavily relies, do not apply to appeals in circuit court.  Miss. R. App. P. 1.

interpretation of Section 23-17-13, which both negates its provisions and does not work in harmony with the plain, ordinary meaning of the language found therein.

¶20. While perhaps not as compelling a point as the two made above regarding statutory definitions and the running of the five-day time period, the incongruity within the notice provision does indicate that another part of the statute would have no effect if the statute were intended to apply to ballot titles drafted for amendments to measures. *See Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 608 (¶ 21) (Miss. 2009) ("When reasonable, this Court is obliged to reach an interpretation that gives effect to all of the statutory language.")

### D. Judicial review of a ballot title for an amendment to a measure could not be complete if authorized by Section 23-17-13.

¶21. Section 23-17-13 provides specific direction to the Circuit Court of Hinds County when it hears the appeal of a ballot title. It requires the reviewing court to determine what title "will meet the requirements of Section 23-17-9." Miss. Code Ann. § 23-17-13 (Rev. 2007). It is silent as to whether the circuit court should consider a further requirement found in Section 23-17-33 that the ballot title generated for the amendment "shall indicate, as clearly as possible, the essential differences in the measure." Traditional statutory construction "requires that a statute receive such construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object." *Owens Corning v. Miss. Ins. Guar. Ass'n*, 947 So. 2d 944, 946 (¶ 7) (Miss. 2007). We find ourselves unable to harmonize the Legislature's inclusion of such an important requirement as clearly indicating the essential differences between the measure and the amendment to the

11

measure on the one hand and its failure to direct the trial court to review that requirement in the statute that Shipman contends authorizes her appeal.

    **E. Section 23-17-9, which provides, "The ballot title formulated by the Attorney General shall be the ballot title of the measure unless changed on appeal," does not create a right to appeal by virtue of being referenced in the later Section 23-17-33.**

¶22.    Mississippi Code Section 23-17-33 requires the Secretary of State "to obtain from the Attorney General a ballot title in the manner provided by Section 23-17-9." Miss. Code Ann. § 23-17-33 (Rev. 2007). In turn, Section 23-17-9 provides as follows:

> Within seven (7) calendar days after the receipt of an initiative measure, the Attorney General shall formulate and transmit to the Secretary of State a concise statement posed as a question and not to exceed twenty (20) words, bearing the serial number of the measure and a summary of the measure, not to exceed seventy-five (75) words, to follow the statement. The statement shall give a true and impartial statement of the purpose of the measure. Neither the statement nor the summary may intentionally be an argument, nor likely to create prejudice, either for or against the measure. Such concise statement shall constitute the ballot title. The ballot title formulated by the Attorney General shall be the ballot title of the measure unless changed on appeal. When practicable, the question posed by the ballot title shall be written in such a way that an affirmative answer to such question and an affirmative vote on the measure would result in a change in then current law, and a negative answer to the question and a negative vote on the measure would result in no change to then current law.

Miss. Code Ann. § 23-17-9 (Rev. 2007). At issue is the extent to which Section 23-17-33's citation of Section 23-17-9 makes the latter section applicable to the titling of amendments to measures suggested by the Legislature. Shipman argues that the words "unless changed on appeal," found at the end of the fourth sentence of Section 23-17-9, are included to show that the right to appeal the title given a legislative amendment to a measure is included in

Section 23-17-13. The Legislature contests Shipman's assertion that the words "unless changed on appeal" affect Section 23-17-33 or Section 23-17-13.

¶23. To decide the issue, we again call upon our principles of statutory construction, on the instant occasion for purposes of understanding the legislative intent coupled with Section 23-17-33 and its reference to Section 23-17-9. As the Court wrote in *Palermo*, 152 So. 3d at 1105 (¶ 13):

> This Court does not "decide what a statute should provide, but [ ] determine[s] what it does provide." *Lawson v. Honeywell Int'l., Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011). "The Court's goal is to give effect to the intent of the Legislature." *Id.* To determine that intent, this Court looks first to the language of the statute. *Id.* "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Id.* Furthermore, words and phrases contained in a statute are to be given their common and ordinary meaning. *Id.* at 1028.

¶24. Section 23-17-33 references Section 23-17-9 for one reason and one reason only – to define "the manner" by which "the Secretary of State shall obtain from the Attorney General a ballot title." None of the words used is ambiguous or unclear. Ascribing to the words their common and ordinary meaning, we conclude Section 23-17-9 is referenced for the limited purpose of instructing the Secretary of State as to the manner for obtaining a ballot title for the amendment to the measure. Once the Secretary of State has done so, the role of Section 23-17-9 within Section 23-17-33 has ended. Nothing in the language of Section 23-17-33 suggests to the Court that the Legislature had any intent also to engraft the manner of appealing the ballot title, which, it is worth noting, is not contained in Section 23-17-9 at all.

**Conclusion**

13

¶25.    Pursuant to the reasoning set forth above, the Court holds that Mississippi Code Section 23-17-13 does not authorize an appeal of the ballot title drafted by the Attorney General for an amendment to a measure adopted by the Legislature pursuant to Section 23-17-31.  The statutory definition of "measure," which limits the term to those proposed amendments to the Constitution that arise from a petition of the electorate, binds the Court, and Section 23-17-13 limits itself to the appeal of measures.  Furthermore, parts of Section 23-17-13 would be rendered without effect, *i.e.*, the five-day time limit and the notice provision, and our rules of statutory construction caution against so construing any statute.  Finally, no right to appeal is created by Section 23-17-33's citation to Section 23-17-9.  Because the Circuit Court of Hinds County heard the appeal without any jurisdiction to do so, we reverse its judgment and render judgment here, finally dismissing Shipman's petition and the case for lack of circuit court jurisdiction.  Because of the imminent deadline for preparation and distribution of the November 3 ballot and as authorized by Mississippi Rule of Appellate Procedure 2(c), a motion for rehearing is not authorized.  The instant decision is final, and the Clerk of the Court is directed to issue the mandate in the case immediately.

¶26.    In light of the foregoing, the Motion to Dismiss filed by the Legislator Intervenors on April 24, 2015, previously passed for consideration with merits of the case by this Court, is denied.

¶27.    **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON, P.J., AND LAMAR, J., CONCUR. CHANDLER, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, P.J.  RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER,**

14

**C.J., AND DICKINSON, P.J.; CHANDLER, J., JOINS IN PART WITH SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**CHANDLER, JUSTICE, CONCURRING IN RESULT ONLY:**

¶28. I concur with the majority that the circuit court's decision must be reversed and this case dismissed, but for different reasons than those the majority cites. The majority finds it clear that the Voter Initiative Act does not permit judicial review of ballot titles for alternative measures proposed by the Legislature. I disagree and would find that the Act is hopelessly ambiguous as to whether the appeal to circuit court provided by Mississippi Code Section 23-17-13 applies to alternative measures. Miss. Code Ann. § 23-17-13 (Rev. 2007). What I believe to be clear is that judicial review of a ballot title for an alternative measure would thrust Mississippi's courts into the midst of a nonjusticiable political question and implicate the ripeness doctrine. Therefore, I respectfully concur in result only. I join Presiding Justice Randolph's separate opinion in part insofar as he agrees with my position that review of the ballot title at issue presents a political question.

*A. Statutory Ambiguity*

¶29. When considering the meaning of a statute, this Court's goal is to discern and give effect to the legislative intent. *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992). We begin by looking to the plain language of the statute. *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011). If the statute's terms are unambiguous, we will apply the plain meaning of the statute. *Id.* But if a statute suffers from ambiguity, we will turn to principles of statutory construction to determine the legislative intent. *Id.*

15

¶30.    Section 23-17-13 of the Voter Initiative Act is ambiguous as to whether it provides for an appeal to the circuit court from a ballot title of an alternative measure. The Act deals with two different types of "measures." The first type is a measure that is proposed by a petition of qualified electors under Section 273 of the Mississippi Constitution, which I will refer to as an "initiative measure." The second type of measure, which I will refer to as an "alternative measure," is an alternative to the initiative measure that is adopted by the Legislature. Although the Act deals with two types of measures, Section 23-17-1 contains a definition of the term "measure" that includes only the initiative measure. It states: "[f]or the purposes of this chapter, the following term shall have the meaning ascribed herein: 'Measure' means an amendment to the Mississippi Constitution proposed by a petition of qualified electors under Section 273, Mississippi Constitution of 1890." Miss. Code Ann. § 23-17-1(1) (Rev. 2007).

¶31.    Because the term "measure" is used inconsistently throughout the Act, applying the Act's definition of "measure" every time the word appears in the Act would create absurd results. In Section 23-17-3, the very next section of the Act, the statute refers to "a proposed initiative measure," which clearly means the "measure" defined in Section 23-17-1, but adds adjectives to make sure the reader knows what type of measure is involved. Miss. Code Ann. § 23-17-3 (Rev. 2007). Section 23-17-5, which governs submission of an initiative measure to the Attorney General, refers to a "proposed initiative measure," a "proposed measure," and a "measure." Miss. Code Ann. § 23-17-5 (Rev. 2007). Section 23-17-7, Section 23-17-9 and Section 23-17-11 all use "initiative measure," and then, "measure." Miss. Code Ann. §§ 23-

16

17-7 through 23-17-11 (Rev. 2007). If the definition of "measure" were as clear as the majority surmises, then no qualifying adjectives would have been needed to convey that these statutes apply only to an initiative measure, not an alternative measure.

¶32.    Section 23-17-31 introduces the alternative measure. It provides that the Legislature may "reject[] a measure submitted to it by initiative petition and adopt[] an amendment to the measure proposed by initiative petition." Miss. Code Ann. § 23-17-31(1) (Rev. 2007). This measure shall be "designated as Alternative Measure No. _____ A." *Id.* Section 23-17-33 governs the ballot title for an alternative measure. Miss. Code Ann. § 23-17-33 (Rev. 2007). Section 23-17-33 states:

> For a measure designated by him as "Alternative Measure No. _____," the Secretary of State shall obtain from the Attorney General a ballot title in the manner provided by Section 23-17-9. The ballot title therefor shall be different from the ballot title of the measure in lieu of which it is proposed, and shall indicate, as clearly as possible, the essential differences in the measure.

*Id.* Ignoring the statutory definition of "measure," Section 23-17-33 uses "measure in lieu of which it is proposed" to signify the initiative measure, and "measure" to signify the alternative measure. To substitute the statutory definition of "measure" in both places it appears in Section 23-17-33 would lead to nonsensical results.

¶33.    The use of the word "measure" in a manner inconsistent with its statutory definition continues in subsequent sections. Section 23-17-37 prescribes the procedure for voting on an initiative measure when an alternative measure is proposed. Miss. Code Ann. § 23-17-37 (Rev. 2007). It states that the ballot titles of the initiative measure and the alternative measure are to be printed on the official ballots. *Id.* Then it states that "the *measure* receiving a

17

majority of the votes . . . and also receiving not less than forty percent (40%) of the total votes cast at the election at which the *measure* was submitted for approval shall be law." *Id.* (emphasis added). It could not be more plain that the Legislature's use of the word "measure" in Section 23-17-37 is at odds with the statutory definition.

¶34. Section 23-17-13 provides that a person dissatisfied with the ballot title drafted by the Attorney General may appeal to the circuit court "by petition setting forth the measure, the title or summary formulated by the Attorney General, and his or her objections . . . ." Miss. Code Ann. § 23-17-13 (Rev. 2007). The majority finds it to be clear that the statutory definition limits the right of appeal to the initiative measure. But because the word "measure" is used inconsistently throughout the Act to refer either to an initiative measure or an alternative measure, I would find that the meaning of "measure" in Section 23-17-13 is ambiguous.

¶35. The majority finds that the appeal deadline and notice requirement in Section 23-17-13 support its conclusion that Section 23-17-13 plainly does not allow appeals of ballot titles of alternative measures. Section 23-17-13 provides that an aggrieved party may appeal "within five (5) days from the publications of the ballot title and summary by the office of the Secretary of State." Miss. Code Ann. § 23-17-13 (Rev. 2007). Under Section 23-17-11, only the ballot title and summary for an initiative measure are published. Miss. Code Ann. § 23-17-11 (Rev. 2007). If Section 23-17-13 were applied to ballot titles from alternative measures, there would be no deadline to appeal from the Attorney General's formulation of the ballot title. Section 23-17-13 also provides that a copy of the petition on appeal and a

18

notice of appeal "shall be served upon . . . the person proposing the measure if the appeal is initiated by someone other than that person." Miss. Code Ann. § 23-17-13 (Rev. 2007). Section 23-17-13 makes no explicit provision for notifying the Legislature of an appeal of the ballot title of an alternative measure. Certainly, these two features of Section 23-17-13 tend to show that Section 23-17-13 was not intended to provide an appeal from the ballot title of an alternative measure.

¶36. Nonetheless, the absence of an appeal deadline and notice provision are far from conclusive on the question of whether Section 23-17-13 embraces appeals concerning alternative measures. This is because Section 23-17-33 states that "the Secretary of State shall obtain from the Attorney General a ballot title in the manner provided by Section 23-17-9." Miss. Code Ann. § 23-17-33 (Rev. 2007). Section 23-17-9 states:

> Within seven (7) calendar days after the receipt of an initiative measure, the Attorney General shall formulate and transmit to the Secretary of State a concise statement posed as a question and not to exceed twenty (20) words, bearing the serial number of the measure and a summary of the measure, not to exceed seventy-five (75) words, to follow the statement. The statement shall give a true and impartial statement of the purpose of the measure. Neither the statement nor the summary may intentionally be an argument, nor likely to create prejudice, either for or against the measure. Such concise statement shall constitute the ballot title. The ballot title formulated by the Attorney General shall be the ballot title of the measure *unless changed on appeal*. When practicable, the question posed by the ballot title shall be written in such a way that an affirmative answer to such question and an affirmative vote on the measure would result in a change in then current law, and a negative answer to the question and a negative vote on the measure would result in no change to then current law.

Miss. Code Ann. § 23-17-9 (Rev. 2007) (emphasis added). The Legislature contends, and the majority finds, that "in the manner provided by Section 23-17-9" clearly excludes the appeal

provision. But Section 23-17-9 provides the appeal process as part of a comprehensive procedure for finalizing a ballot title formulated by the Attorney General. Because Section 23-17-33 invokes that procedure for ballot titles for alternative measures, a strong argument exists that the Act's language provides an appeal from a ballot title for an alternative measure. Given the inconsistencies I have identified, Section 23-17-13 is ambiguous as to whether it provides for an appeal in this case. But because I believe this case presents a nonjusticiable political question, I would construe the statute in a manner that permits no appeal. "When one construction of a statute would endanger its constitutionality, it will be construed in harmony with the Constitution if, under the language of the statute, this may reasonably be done" *Bd. of Tr. of State Inst. of Higher Learning v. Ray*, 809 So. 2d 627, 636 (Miss. 2002) (quoting *Jackson v. State*, 337 So. 2d 1242, 1251 (Miss. 1976) (superseded by statute on unrelated grounds)).

### B. Political Question

¶37. The political-question doctrine is rooted in separation of powers. *Baker v. Carr*, 369 U.S. 186, 210, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962). The doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Ghane v. Mid-S. Inst. of Self Def. Shooting, Inc.*, 137 So. 3d 212, 217 (Miss. 2014) (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230, 106 S. Ct. 2860, 92 L. Ed. 2d 166 (1986)). "In determining whether a question falls within (the political question) category, the appropriateness under our system of government of

20

attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations." *Baker*, 369 U.S. at 210, 82 S. Ct. 691 (quoting *Coleman v. Miller*, 307 U.S. 433, 454-55, 59 S. Ct. 972, 83 L. Ed. 1385 (1939)).

¶38. A nonjusticiable political question may be found if any one of six independent factors exists, including

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; or

> (2) a lack of judicially discoverable and manageable standards for resolving it; or

> (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

> (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

> (5) an unusual need for unquestionable adherence to a political decision already made; or

> (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Ghane*, 137 So. 3d at 217-18 (quoting *Baker*, 369 U.S. at 217, 82 S. Ct. 691). If one of these factors is inextricable from the case, a political question exists, and the case will be dismissed as nonjusticiable. *Ghane*, 137 So. 3d at 218 (citing *Baker*, 369 U.S. at 217, 82 S. Ct. 691).

¶39. Turning to this case, Article 15, Section 273 of the Mississippi Constitution provides that the Legislature can amend an initiative measure and both "the amended version and the original initiative shall be submitted to the electors." Miss. Const. art. 15, § 273(7). It further

21

states that "[t]he ballot titles of both such measures shall be so printed on the official ballots that a voter can express separately two (2) preferences: First, by voting for the approval of either measure or against both measures, and secondly, by voting for one measure or the other measure." Miss. Const. art. 15, § 273(8). With the Voter Initiative Act, the Legislature provided for the Attorney General to draft the ballot titles for initiative measures and alternative measures according to statutory requirements. Miss. Code Ann. § 23-17-9 (Rev. 2007); Miss. Code Ann. § 23-17-33 (Rev. 2007). The Legislature also provided for an appeal to circuit court of the Attorney General's ballot title. Miss. Code Ann. § 23-17-13 (Rev. 2007).

¶40.    On appeal, the circuit court "may hear arguments, and, within ten (10) days, shall render its decision and file with the Secretary of State a certified copy of such ballot title or summary as it determines will meet the requirements of Section 23-17-9." Miss. Code Ann. § 23-17-13 (Rev. 2007). Section 23-17-9 provides the following requirements for drafting a ballot title:

> The statement shall give a true and impartial statement of the purpose of the measure. Neither the statement nor the summary may intentionally be an argument, nor likely to create prejudice, either for or against the measure. . . . When practicable, the question posed by the ballot title shall be written in such a way that an affirmative answer to such question and an affirmative vote on the measure would result in a change in then current law, and a negative answer to the question and a negative vote on the measure would result in no change to then current law.

Miss. Code Ann. § 23-17-9 (Rev. 2007). For an alternative measure, the ballot title must "be different from the ballot title of the measure in lieu of which it is proposed, and shall

22

indicate, as clearly as possible, the essential differences in the measure." Miss. Code Ann. 23-17-33 (Rev. 2007).

¶41.    To hold in favor of Shipman, this Court would have to construe Section 23-17-13 to allow an appeal to circuit court from the ballot title of an alternative measure. To resolve an appeal under Section 23-17-13, the circuit court must file with the Secretary of State a ballot title that complies with Sections 23-17-9 and 23-17-33. Thus, the judiciary's task under Section 23-17-13 is not to interpret language, that is, to determine what language means, as we customarily do in statutory or constitutional interpretation, but actually to draft the ballot title for a measure that will appear on the ballot in an upcoming election. I would find that drafting a ballot title for an alternative measure exhibits a "lack of satisfactory criteria for a judicial determination" and epitomizes a "lack of judicially discoverable and manageable standards" for resolution. *See **Baker***, 369 U.S. at 210, 217, 82 S. Ct. 691. The Legislature should not employ the judiciary as a draftsman for a ballot title for its alternative measure. To do so enmeshes the judiciary too deeply in the political process. "It is not the policy of this state to have elections and other political matters of government reserved to legislative discretion to be interfered with by the judges and officers of the judicial department of the government." ***Gibbs v. McIntosh***, 78 Miss. 648, 29 So. 465-66 (1901).

¶42.    Additionally, requiring the judiciary to draft a ballot title for an upcoming election implicates the ripeness doctrine, because it requires a court to render an advance opinion on the meaning of the measure. In ***Hughes v. Hosemann***, 68 So. 3d 1260, 1266 (Miss. 2011), we found that a challenge to the substance of a proposed constitutional amendment was not

23

ripe for judicial review. The plaintiffs had challenged the proposed constitutional amendment on the ground that its passage would violate the Constitution's ban on modifying the Bill of Rights. *Id.* at 1265. We held that "[t]his Court is without power to determine the constitutionality of a proposed statute, amendment, or initiative prior to its approval by the Legislature or electorate." *Id.* Recognizing the judiciary's deference to the legislative process, we stated that "[w]e cannot invade the territory of the Legislature or the electorate to review the substantive validity of a proposed initiative, and thereby, we will honor the maxim embodied in the constitutional mandate of separation of powers." *Id.* at 1266. This Court also held that pre-election review of the substance of a proposed initiative measure would constitute an advisory opinion. *Id.* at 1263. Shipman contends that this case does not run afoul of *Hughes* because no advance opinion on the substance of the alternative measure is required. But drafting a ballot title to comply with Sections 23-17-9 and 23-17-33 necessitates interpreting the measure's language. The judiciary's drafting of ballot titles would create precedent with the foreseeable effect of constraining the Court in a future constitutional challenge once an amendment has passed.

¶43.    Under our constitution, a measure's ballot title is the only explanation of the measure that is seen by the electorate on the ballot. The judiciary has no more business drafting the ballot title than it does drafting or editing the words of the measure itself. I would hold that drafting a ballot title for an alternative measure presents a nonjusticiable political question. It implicates the ripeness doctrine and our policy against issuing advisory opinions. Therefore, while I would find that Section 23-17-13 is ambiguous as to whether an appeal

24

exists from a ballot title of an alternative measure, I would not construe the statute to provide an appeal.

**RANDOLPH, P.J., JOINS THIS OPINION IN PART.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶44.    I concur with the result reached by five other justices to reverse and render, relying heavily upon Justice Chandler's political-question analysis—especially excluding judicial review of "policy choices and value determinations constitutionally committed for resolution to the halls of [the Legislature]." *Ghane v. Mid-S. Inst. of Self Def. Shooting, Inc.*, 137 So. 3d 212, 217 (Miss. 2014). The substance of the issue before us today, to whom and how much money should be spent to provide services to the public, is a policy choice and value determination committed for resolution to the Legislature according to our Constitution. Miss. Const. art. 1, §1; art. 4, §69. "A textually demonstrable constitutional commitment of the issue to a coordinate political department" renders today's issue a nonjusticiable political question. *See McDaniel v. Cochran*, 158 So. 3d 992, 1003 (Miss. 2014) (Randolph, P.J., concurring) (quoting *Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)).

¶45.    The judiciary interprets laws; it does not draft or consider legislation in the making. Miss. Const. art. 6, §144; *Orick v. State*, 105 So. 465, 467 (Miss. 1925). *See also Hughes v. Hosemann*, 68 So. 3d 1260, 1265 (Miss. 2011); *Speed v. Hosemann*, 68 So. 3d 1278, 1280 (Miss. 2011). Any attempt to conscript the judiciary into a role prescribed for the

Attorney General[4] violates the separation of powers mandate of our Constitution. Miss. Const. art. 1, §2; Miss. Code Ann. § 23-17-9 (Rev. 2007). One of the statutory interpretations at issue directs the judiciary to draft the text of a ballot title (legislation in the making) if the court finds the proposed ballot title insufficient. Such an act places serious constraints upon this Court later considering an actual controversy, *i.e.*, a constitutional challenge, should either amendment pass and become law. The drafting of a ballot title is inherently a substantive act directed to the Attorney General prior to an amendment becoming law. It is a decision we cannot render. *See* **Hughes**, 68 So. 3d at 1265.

¶46.    That being said, the ballot title issues which precipitated this appeal expose significant shortcomings in the entire process. The ballot which will be before the electorate come November will not provide voters with the constitutional provision they are called upon to amend. Nor will the voters be provided with the actual words which would be in their Constitution, if either Measure 42 or Alternative Measure 42A is approved. Should not our law require that the voters be informed of changes to their current constitution, which either 42 or 42A might bring about?

¶47.    Article 8, Section 201 of Mississippi's Constitution currently reads: "The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." The voters of this state will vote for or against competing proposed amendments to Article 8, Section 201—Measure 42 and Alternative Measure 42A. However, our law provides that voters will

---

[4]Or into the role of ballot preparation prescribed for the Secretary of State. Miss. Code Ann. § 23-15-367 (Rev. 2007).

be required to cast votes on ballot titles without seeing the actual words of the amendment they are called upon to place in their Constitution.

¶48.    Alternative Measure 42A proposes to amend the state Constitution as follows: "The Legislature shall, by general law, provide for the establishment, maintenance and support of an effective system of free public schools." As with 42, the voters will see only the ballot title for 42A. After today's decision, absent any changes by the attorney general, the ballot title will read "Should the Legislature provide for the establishment and support of effective free public schools without judicial enforcement?"

¶49.    It is argued by the proponents of Measure 42 that  the ballot title formulated by the attorney general for Alternative 42A fails to indicate "the essential differences" between 42 and 42A, as required by Section 23-17-33. I agree. The differences between 42 and 42A are glaring and material. Alternative Measure 42A creates no new rights. Alternative Measure 42A keeps the responsibility of funding the state's public schools with those responsible for the state's budget—the Legislature, in their discretion—as opposed to the entire state government. Alternative Measure 42A, like the current Section 201 of the Mississippi Constitution, does not specifically grant courts injunctive enforcement powers, but no one seriously contests the Court's inherent power to be the supreme arbiter of the Constitution. *See Ex Parte Wren*, 63 Miss. 512, 535 (1886) ("[T]he courts are guardians of the constitution in the performance of their duty to decide causes[.]"). Another "essential difference" is

Measure 42's use of the word "efficient" versus Alternative Measure 42A's use of "effective."[5] Should not the voters be provided with the distinction?

¶50. Some would argue that Alternative Measure 42A was prompted by proposed deficiencies in Measure 42's ballot title.[6] Though the ballot title for Measure 42 is not at issue in this case, it is likewise problematic. Initiative Measure 42 proposes to amend the state's Constitution to read as follows:

> To protect each child's fundamental right to educational opportunity, the State shall provide for the establishment, maintenance, and support of an adequate and efficient system of free public schools. The chancery courts of this state shall have the power to enforce this section with appropriate injunctive relief.

Its ballot title as presently proposed reads "Should the state be required to provide for the support of an adequate and efficient system of free public schools?"

¶51. Without passing judgment on the wisdom or folly of Measure 42, nothing on the ballot informs voters that (1) voting for this proposed amendment creates a *new* right for children to an "educational opportunity;" or (2) any child's right to an "educational opportunity" shall be enforced by a chancellor if an attorney can convince the chancellor that the amount of money budgeted for education by the Legislature fails to provide an "adequate and efficient system" (whatever that means). Nothing on the ballot informs the voter that if Measure 42 becomes law, the newly created right can be asserted against the State (which includes the judicial, executive, and legislative branches), even though control of the state's purse strings

---

[5]Our armed forces are highly effective, but many times not efficient.

[6]The ballot title for Measure 42 was challenged in the Circuit Court of Hinds County. The challenge was denied and not appealed further to this Court.

28

is and has always been with the Legislature, the same magistracy of our state government given the power to "provide for the establishment, maintenance and support of free public schools." Miss. Const. art. 8, § 201.

¶52. Voters are not informed that, under our existing Constitution, the Legislature has discretion in funding education—determining the amount to be spent, balancing those expenditures with the demands of other critical government services (*e.g.*, public safety, economic development/job creation, transportation, healthcare (physical and mental), *inter alia*). If approved, Measure 42 could require education to be funded to an unspecified level, without consideration of unknown fiscal burdens to provide other essential government services. Our present Constitution does not empower courts to determine the fiscal policies of our State, clearly a political question.

¶53. Measure 42 does not define "adequate and efficient."[7] Only the Legislature has the power to collect revenue and appropriate funding for the state's public schools. *See* Miss. Const. art. 4, §§ 69-70. Courts have little or no training or experience in such matters, and more importantly, have no specific constitutional authority to decide how to distribute the state's limited resources. *See* Miss. Const. art. 1, § 2 ("No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.").

---

[7]While the proponents of Measure 42 defined "adequate and efficient" in their initiative petition ("For purposes of the initiative, a minimum standard of contemporary adequate education is described by the funding formula of the current version of the Mississippi Adequate Education Program and an efficient education is one that will, among other things, enable Mississippi's public school graduates to compete favorably with their counterparts in surrounding states."), the proponent's definitions will not be on the ballot.

29

¶54.    While Section 273 of Mississippi's Constitution prescribes a process for amendment, it places no restrictions on the construction of any ballot title. The Legislature enacted a statute that provides ballot titles shall not exceed twenty words. Miss. Code Ann. § 23-17-9 (Rev. 2007). In doing so, the Legislature placed on the attorney general a burden that the parties at oral argument conceded is a nigh *impossible* task—"indicate [to the voters], as clearly as possible, the essential differences in the measure"—in twenty words or less—without being argumentative. Miss. Code Ann. §§ 23-17-33, 23-17-9 (Rev. 2007). As the statute requires the differences be indicated *as clearly as possible*, and as all parties agree that is practically *impossible*, the twenty-word limit in Section 23-17-9 is unworkable, as applied in this case. Such constraints cannot fairly be imposed upon or adhered to by the Attorney General. The legislature should address this conundrum when it next reconvenes.[8]

¶55.    Further, the ballot title for 42A is subject to multiple interpretations. It could be read as "should the Legislature provide for schools without the courts having to force them to do so." I dare say everyone would agree the Legislature *should* provide free public schools without the courts forcing it to do so. But it could also be read as denying the court's authority to enforce a constitutional amendment concerning free public schools, an interpretation that would be grievously misleading.

---

[8]The unfeasibility of the twenty-word limitation becomes even more apparent considering the proposed textual amendment of Measure 42 is forty-seven words, Alternative 42A is only twenty-one words, and the current Constitution (Section 201) is twenty-seven words. The attorney general should not be expected to reduce a twenty-one-word amendment to twenty words, while exposing the differences between two competing proposed amendments.

¶56. "As the highest state court, this Court has the proper authority and responsibility to interpret the Mississippi Constitution of 1890." ***Barbour v. Delta Corr. Facility Auth.***, 871 So. 2d 703, 710 (Miss. 2004). *See also **Alexander v. Allain***, 441 So. 2d 1329, 1333 (Miss. 1983) ("The interpretation of the constitution becomes the duty of the judicial department when the meaning of that supreme document is put in issue."); ***Marbury v. Madison***, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). If the Legislature shut down all the public schools, could this Court be asked to intervene under the current Constitution? Certainly it has the authority to do so. *See* Miss. Const. art. 6, § 144 ("The judicial power of the State shall be vested in a Supreme Court and such other courts as are provided for in this Constitution."). *See also **Orick v. State***, 105 So. 465, 467 (Miss. 1925) ("The judicial department of every government is the rightful expositor of its laws; and emphatically of its supreme law. If, in a case depending before any court, a legislative act shall conflict with the Constitution, it is admitted, that the court must exercise its judgment on both, and that the Constitution must control the act."). But today's dispute does not concern a law or legislative act, but rather a proposed law. Indeed, Measure 42 was rejected by the Legislature, which proposed its own alternative (42A), both of which are no more than proposed laws—which we have previously declared in *Hughes* and *Speed* as not ripe for consideration. *See **Hughes v. Hosemann***, 68 So. 3d 1260, 1265 (Miss. 2011); ***Speed v. Hosemann***, 68 So. 3d 1278, 1280 (Miss. 2011).

¶57.   While the ballot titles[9] and a summary of the fiscal analysis must appear on the ballot,[10] I find no command that *only* these two provisions may appear on the ballot. The Secretary of State is responsible for preparing the ballots in the upcoming election and is awaiting the outcome of this case. Is it unreasonable to reveal to each voter exactly what he or she is being asked to vote on? It might be prudent for the Secretary of State to consider additional disclosure on the actual ballot, to illuminate the issue and assist the voters.

(1)     The full text of Article 8, Section 201 of the Mississippi Constitution as it now reads:

> The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe.

(2)     The full text of Initiative Measure 42:

> To protect each child's fundamental right to educational opportunity, the State shall provide for the establishment, maintenance, and support of an adequate and efficient system of free public schools. The chancery courts of this state shall have the power to enforce this section with appropriate injunctive relief.

(3)     The full text of Legislative Alternative Measure 42A:

> The Legislature shall, by general law, provide for the establishment, maintenance and support of an effective system of free public schools.

The ballot should also include the constitutionally and statutorily required provisions.[11]

---

[9] Miss. Const. art. 15, § 273 (8) ("If an initiative measure proposed to the Legislature has been rejected by the Legislature and an alternative measure is passed by the Legislature in lieu thereof, the ballot titles of both such measures shall be so printed on the official ballots . . . ."); *accord* Miss. Code Ann. §23-17-37.

[10] Miss. Const. art. 15, § 273 (6) ("A summary of each fiscal analysis shall appear on the ballot.").

[11] Miss. Const. art. 15, § 273 (8) ("If an initiative measure proposed to the Legislature has been rejected by the Legislature and an alternative measure is passed by the Legislature

¶58. Although the Appellees in this case claim they are objecting only to the form of Alternative Measure 42A's ballot title, it is the substance of that ballot title to which they object. They are not claiming the shape or structure of the twenty-word statement is legally deficient. They are not complaining of the order of the words used or claiming that the title violates the twenty-word limit. They are not complaining of the style of the statement, nor are they claiming any words have been misspelled or unduly emphasized (italicized, capitalized, bold-faced), nor are they claiming the ballot title is improperly punctuated. In sum, the complaint against Alternative Measure 42A's ballot title is not one as to form, but is rather a complaint as to the substance therein. It is not within this Court's authority to decide substantive issues of proposed amendments to our Constitution prior to their acceptance by the electorate.

**WALLER, C.J., AND DICKINSON, P.J., JOIN THIS OPINION IN PART. CHANDLER, J., JOINS IN PART WITH OPINION**.

**KITCHENS, JUSTICE, DISSENTING:**

¶59. This case is nonjusticiable, because the Mississippi Rules of Appellate Procedure prohibit third-party intervention. Therefore, the Legislature lacks standing as a party to this litigation. In the absence of a properly joined appellant, any decision on the merits of this case amounts to an advisory opinion. Accordingly, I respectfully dissent.

---

in lieu thereof, the ballot titles of both such measures shall be so printed on the official ballots that a voter can express separately two (2) preferences: First, by voting for the approval of either measure or against both measures, and, secondly, by voting for one measure or the other measure. . . . Substantially the following form shall be a compliance with this subsection[.]"); *accord* Miss. Code Ann. 23-17-37.

¶60. In the Circuit Court of the First Judicial District of Hinds County, the Legislature, or, rather, some legislators who purport to represent the interests of the body as a whole, filed a motion to intervene in this suit under Rule 24(a) of the Mississippi Rules of Civil Procedure. There is a serious defect in this motion, namely, this case was *appealed* from the Attorney General's draft of a ballot title. Thus, the circuit court's purpose was to determine the legal sufficiency of the Attorney General's ballot title rather than conducting a trial or hearing *de novo*, and the circuit court convened as a court of appeals, not as a trial court. *See Falco Lime, Inc. v. Mayor & Aldermen of the City of Vicksburg*, 836 So. 2d 711, 721 (Miss. 2002); URCCC 5.01 ("Except for cases appealed directly from justice court or municipal court, all cases appealed to circuit court shall be on the record and not a trial *de novo*."). As such, it is clear that the Mississippi Rules of Appellate Procedure and not the Mississippi Rules of Civil Procedure governed the circuit court's consideration of this case. *City of Jackson v. United Water Servs., Inc.*, 47 So. 3d 1160, 1161-62 (Miss. 2010).

¶61. This Court addressed a nearly identical situation in *City of Jackson v. United Water Services, Inc.*, 47 So. 3d 1160 (Miss. 2010). In *United Water Services,* Jackson Water Partnership filed a motion to intervene in an appeal from a city council decision to the Circuit Court of the First Judicial District of Hinds County. This Court held that "the Mississippi Rules of Civil Procedure . . . apply to trial proceedings only, except where therein expressly provided to the contrary." *Id.* at 1162 (quoting *Cooper v. City of Picayune*, 511 So. 2d 922, 923 (Miss. 1987)). Moreover, when a circuit court sits as an appellate court, "the Mississippi Rules of Appellate Procedure control exclusively." *Id.* at 1165. The Court further noted that

34

"[t]he Mississippi Rules of Appellate Procedure *clearly and unequivocally do not provide for intervention at the appellate level*" and that "no constitutional provision, statute, or court rule permits intervention [in appeals]." **Id.** at 1162, 1165 (emphasis added). This Court denied the Jackson Water Partnership the right to intervene. **Id.** at 1165.

¶62. In light of this Court's precedent in **United Water Services**, the Hinds County Circuit Court erred in granting the Legislature the status of intervenor. It is well established that, because the Mississippi Rules of Appellate Procedure lack a mechanism for intervention and because this Court has specifically foreclosed intervention in this context, the Legislature is not a proper party before this Court. *Compare with* F.R.A.P. 15(d) (intervention permitted under Title IV—"Review or Enforcement of an Order of an Administrative Agency, Board, Commission, or Officer"). The Legislature, however, is not altogether prevented from participating as a third party in the appellate context. We have held that "Mississippi Rule of Appellate Procedure 29 provides an avenue for persons other than the parties to participate in the appellate process via the filing of an amicus curiae brief." **United Water Servs., Inc.**, 47 So. 3d at 1165; M.R.A.P. 29.

¶63. Even assuming *arguendo* that the Mississippi Rules of Civil Procedure applied to the Circuit Court of the First Judicial District of Hinds County's consideration of the merits of Shipman's appeal, the Legislature would not be entitled to intervene under Rule 24(a). Mississippi Rule of Civil Procedure 24(a)(2) provides that a party may intervene in an action "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical

matter impair or impede his ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties*." M.R.C.P. 24(a)(2) (emphasis added). Here, Shipman was not appealing or attacking the language of the Legislature's alternative ballot measure. Instead, she was appealing the sufficiency of the *Attorney General's* ballot title. The Legislature did not and cannot articulate an interest in the *Attorney General's* ballot title that is not "adequately represented" by the Attorney General, who is a proper party to this litigation. *See* M.R.C.P. 24(a)(2). As such, even if Rule 24 intervention were available to parties during an appeal to circuit court, it would not allow the Legislature to intervene in this case.

¶64.    Ultimately, the Mississippi Rules of Appellate Procedure do not provide a mechanism for parties to intervene in appeals, and the Legislature is before this Court improperly as an intervenor in an appeal. The Legislature has not been properly joined as a party and lacks standing to advance an appeal. Because I believe that a decision on the merits without a properly joined appellant amounts to an improper advisory opinion, I respectfully dissent.

**KING, J., JOINS THIS OPINION.**

**PIERCE, JUSTICE, DISSENTING:**

¶65.    Had the Legislature clearly articulated that the Alternative Measure was not appealable, I would agree with the majority. But it did not. As Justice Chandler concludes, ". . . the Act is hopelessly ambiguous as to whether the appeal to circuit court provided by Mississippi Code Section 23-17-13 applies to alternative measures."

36

¶66. Amendments to the Constitution may be proposed either by the Legislature or by an initiative of the people. Miss. Const. art. 15, § 273(1).

¶67. A proposed amendment using the initiative process has multiple requirements. For example, the Attorney General, after receiving the initiative, must formulate a concise statement, posed as a question, and a summary of the measure. The concise statement is commonly referred to as the "ballot title." Under Mississippi Code Section 23-17-9, the statement must be impartial and must not be intentionally argumentative or prejudicial. Additionally, the title must not exceed twenty words and the measure's summary is limited to seventy-five. Miss. Code Ann. § 23-17-9 (Rev. 2007).[12]

¶68. Section 23-17-9 provides "the ballot title formulated by the Attorney General shall be the ballot title of the measure unless changed on appeal." The section states that, when possible, the title should be formulated so that an elector could answer in the affirmative to amend the existing law, or conversely, in the negative, to leave the law the same.

¶69. Upon receiving a qualified initiative, the Secretary of State must file the certified initiative with the Clerk of the House and the Secretary of the Senate. Miss. Const. art 15, § 273(6). The Legislature may adopt, amend, or reject a constitutional initiative by majority vote. Miss. Const. art. 15, § 273(6). If the Legislature votes to amend an initiative or reject

---

[12] I agree with Justice Randolph that there are significant shortcomings in the entire process. However, I disagree with Justice Randolph's assertion that analyzing the issue before us violates the holding of *Hughes v. Hoseman*, 68 So. 3d 1260 (Miss. 2011). I wrote *Hughes. Hughes*, in footnote 10, recognized that Mississippi Code Section 23-17-13 allows a challenge to the ballot title. No one before the Court in this matter has challenged the substance of either Initiative 42 or Alternative Measure 42A. The only matter before this Court is the form of the question to be on the ballot for Alternative Measure 42A.

an initiative, it shall submit an alternative measure to the people's proposal, and both measures shall be submitted to the voters. Miss. Const. art 15, § 273(7) - (8).

¶70. Section 273 of Article 15 to the Mississippi Constitution is explicit regarding the presentation of both measures to the voters. The measures must be presented such that a voter could vote either against both measures, or in favor of one measure over the other. Miss. Const. art 15, § 273(8).

¶71. The majority readily admits that the "statutory language at issue . . . can be confusing." Justice Chandler's concurring-in-result opinion demonstrates this point well. I take the position that, because the Legislature failed to articulate statutorily that an alternative measure is not appealable, the ambiguity should be interpreted against the Legislature. Section 23-17-13 gives any dissatisfied person the right to challenge the Attorney General's formulation of a ballot title or summary, and the ballot-title-issue proceeding is appealable. Because an appeal is a privilege and not a right, the resolution of this question is founded in statutory interpretation. Nowhere is the ability to appeal a ballot title to the circuit court explicitly limited by statutory language or caselaw.

¶72. Section 23-17-9 states, in pertinent part, that the ballot title formulated by the Attorney General "shall give a true and impartial statement of the purpose of the measure[,]" and "shall be the ballot title of the measure unless changed on appeal." Miss. Code Ann. § 23-17-9 (Rev. 2007). Thus, it is clear from a plain reading of the statute that ballot titles formulated by the Attorney General are appealable.

¶73. The Legislature argues that Section 23-17-13 provides only for review of ballot measures and does not provide for review of *alternative measures* or *ballot titles*. In other words, the Legislature employs a strict reading of Section 23-17-13, taken to mean that the circuit court may review only original measures created by the people and may not review legislative alternatives to the original measures.

¶74. The Legislature contends, and the majority agrees, that the language of Section 23-17-13 mentions only "measures" and not *alternative* measures. This, according to the majority, indicates that the Legislature, in drafting Section 23-17-13, did not grant authority to the circuit court to review alternative measures. Apart from a generous reading of the statutes in question, there is no legal support for the contention that Section 23-17-13 applies only to voter initiatives.

¶75. When considering the merits of this case of first impression, this Court has no pronounced standard of review regarding the circuit court's decision to reformulate the Attorney General's ballot title. The standard for the title composure, under Section 23-17-9, is that the title must be impartial and must not be intentionally argumentative or prejudicial. Additionally, the title must not exceed twenty words, and the measure's summary is limited to seventy-five words. Under Section 23-17-33, the ballot title must be "different from the ballot title of the measure in lieu of which it is proposed, and shall indicate, as clearly as possible, the essential differences in the measure." Section 23-17-9 provides that, when possible, the title should be formulated so that an elector could answer in the affirmative to amend the existing law, or conversely, in the negative, to leave the law the same.

¶76. The alternative ballot title was changed by the circuit court after its finding that the title, as drafted by the Attorney General, did not comport with Mississippi law. When presented to the circuit court, the title read:

> **Should the Legislature provide for the establishment and support of effective free public schools without judicial enforcement?**

This title, without making any assessment of its content, at minimum, adhered to Section 23-17-9, in that an affirmative answer would change the law, and an answer in the negative would leave the law unchanged.

¶77. The circuit court's revised version read:

> **Should the Legislature establish and support effective schools, but not provide a mechanism to enforce that right?**

This version of the title presents a problem regarding the affirmative/negative concern expressed in the governing code section. Specifically, a voter may not simply answer "yes" or "no" in response to the question posed, because inclusion of the conjunction "but" makes the seemingly singular question a two-pronged query. While it is possible that a voter could answer affirmatively that the Legislature should establish and support effective schools *and* that no mechanism should exist to enforce that right, it is also possible that a voter could answer "yes" to the first part of the question and answer "no" to the latter. This confuses the voting process and violates the governing code section. Additionally, Judge Kidd had excised the "free public" language before the word "schools," which also may be misleading to the voters. Both the original and alternative measures included the phrase "free public schools," as does the current Constitution.

¶78. To conclude, the circuit court erred because its revised title did not comport with the affirmative/negative consideration imposed by the statute. In addition, the circuit court did not adequately explain the basis of its decision. It simply adopted one of the revised titles submitted by Shipman. I would reverse and remand with a strict scheduling order which would allow this Court adequate time to review, should the circuit court's decision be appealed. A compressed time schedule would be necessary in order for the Secretary of State to timely print ballots upon final resolution of this dispute.